ALEC S. BRACKEN (USBN 17178)
CONTIGO LAW
P.O. Box 249
Midvale, UT 84047
Phone: 801-980-9430
Email: alec@contigo.law
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

S.L.G., individually and on behalf of all others similarly situated, EILIN CIPAGUATA-HUAMANI, individually and on behalf of all others similarly situated, FABRIZIO JESUS LEYVA NARIO, individually and on behalf of all others similarly situated, K.V.C., individually and on behalf of all others similarly situated, GENESIS ARANIBAR GALINDO, individually and on behalf of all others similarly situated, OSCAR AGUIRRE-LIMA, individually and on behalf of all others similarly situated

Plaintiffs

v.

TODD BLANCHE, in his official capacity as the Attorney General of the United States, SIRCE E. OWEN, in her official capacity as Acting Director of the Executive Office for Immigration Review, MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement, EVAN TJADEN, in his official capacity as Acting ICE Field Office Director, The United States Department of Justice, The Executive Office for Immigration Review, United States Immigration and Customs Enforcement.

Defendants

Civil No.: 2:26-cv-00833

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I. RELIEF SOUGHT AND GROUNDS FOR THE MOTION[1]

Plaintiffs seek preliminary relief under Rule 65 and, alternatively, 5 U.S.C. § 705, prohibiting Defendants from using categorical policies, challenged BIA precedent, or the Texas consent judgment to displace the individualized standards governing docket-management relief. Plaintiffs do not seek favorable immigration decisions; they seek enforcement of the governing statutes and regulations during judicial review. *See* 5 U.S.C. §§ 705, 706(2)(A), (C), (D); 8 C.F.R. §§ 1003.18(c)–(d), 1003.29; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954).

The injuries are immediate. S.L.G. must duplicate her pending USCIS asylum application or face an order of removal without an EOIR asylum claim. Exs. 3, 5. Denial of administrative closure prevents Ms. Cipagauta and Mr. Leyva from pursuing Form I-601A. Exs. 6, 10–11; 8 C.F.R. § 212.7(e)(4)(iii). DHS also seeks to recalendar K.V.C.'s, Genesis's, and Oscar's closed proceedings despite their approved SIJ petitions and Oscar's unexpired deferred action. Exs. 12–20.

These procedural injuries arise independently of any final removal order. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–94 (2018); *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492–97 (1991). In a closely analogous case, the court held that §§ 1252(a)(5) and (b)(9) did not bar collateral challenges to policies exposing beneficiaries of humanitarian programs to removal and granted classwide relief under § 705. *Immigration Center for Women & Children v. Noem*, No. 2:25-cv-09848-AB-AS, ECF No. 57 at 26–27, 85–89, 93–96 (C.D. Cal. May 20, 2026).

Plaintiffs are likely to succeed, their injuries cannot be adequately remedied through later review, and requiring lawful, individualized adjudication serves the public interest without cognizable

[1] On September 8, 2026, undersigned counsel contacted the United States Attorney's Office for the District of Utah, advised that Plaintiffs intended to seek preliminary injunctive relief, and requested the Government's position. As of the filing of this Motion, the Government has not responded or otherwise stated its position.

harm to Defendants. Plaintiffs seek relief for the defined Rule 23(b)(2) Class and Subclasses limited to matters before, or under the docket control of, the Salt Lake City Immigration Court.

## II. RELEVANT BACKGROUND

### A. The Governing Statutory and Regulatory Framework

Congress gave USCIS initial jurisdiction over asylum applications filed by unaccompanied children, and DOJ's regulations expressly authorize termination of removal proceedings in that circumstance. 8 U.S.C. § 1158(b)(3)(C); 8 C.F.R. § 1003.18(d)(1)(ii)(A). Congress also created SIJ classification for children who cannot reunify with a parent because of abuse, neglect, abandonment, or a similar basis and whose return would not serve their best interests. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11.

DOJ's regulations govern termination, continuances, administrative closure, and recalendaring. Contested closure and recalendaring motions require consideration of the totality of the circumstances, and "[n]o single factor is dispositive." 8 C.F.R. § 1003.18(c)(3). Continuances may be granted for good cause, and termination is authorized in specified circumstances. *Id.* §§ 1003.18(d), 1003.29. The closure analysis must also consider whether closure is necessary to pursue an action before DHS. *Id.* § 1003.18(c)(3)(i)(C). That consideration is critical because a person in pending removal proceedings generally cannot file Form I-601A unless the proceedings are administratively closed and remain unrecalendared. 8 C.F.R. § 212.7(e)(4)(iii).

Defendants must follow these regulations unless they are lawfully altered. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). The APA authorizes courts to set aside agency action that is arbitrary, contrary to law, beyond statutory authority, or procedurally unlawful. 5 U.S.C. § 706(2)(A), (C), (D).

**B. The Challenged Categorical Policy**

Plaintiffs challenge Defendants' use of BIA precedent to transform factors requiring individualized consideration into presumptive barriers to docket-management relief. *Matter of Cahuec Tzalam* vacated administrative closure in an SIJ case based on insufficient prima facie evidence and anticipated visa delay. 29 I. & N. Dec. 300, 304–06 (BIA 2025). *Matter of Ibarra-Vega* deemed closure exceeding six months presumptively unreasonable absent unique circumstances and applied that presumption to recalendaring. 29 I. & N. Dec. 476, 481–83 (BIA 2026). *Matter of Pinzon Rozo* similarly vacated a continuance for an SIJ beneficiary because visa availability was uncertain and distant. 29 I. & N. Dec. 507, 507–10 (BIA 2026).

Applied categorically, these decisions conflict with regulations requiring consideration of the totality of the circumstances and providing that "[n]o single factor is dispositive." 8 C.F.R. § 1003.18(c)(3). The regulations also independently authorize termination in specified circumstances and continuances for good cause. *Id.* §§ 1003.18(d), 1003.29.

Defendants additionally treat the consent judgment in *State of Texas v. Department of Justice*, No. 7:26-cv-00070-O, ECF No. 5 at 1–2 (N.D. Tex. June 22, 2026), as requiring denials or recalendaring in Utah. Although that judgment vacated and enjoined enforcement of the 2024 Administrative Closure Rule, it did not adjudicate Plaintiffs' independent statutory, regulatory, or constitutional rights or direct the disposition of their proceedings. *See Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

DHS's materially identical September 8 motions demonstrate the challenged policy's application: each seeks to recalendar a closed SIJ case based on the asserted need to comply with the Texas judgment, not an individualized change in circumstances. Exs. 12, 15, 18. That judgment does not authorize Defendants to disregard independently governing law. *See* 5 U.S.C. § 706(2)(A), (C),

(D); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 374 (1986).

**C. Named Plaintiffs' Immediate Injuries**

**1. S.L.G.: Forced Duplicative Asylum Litigation or Immediate Order of Removal**

USCIS received S.L.G.'s affirmative asylum application on June 12, 2026, and that application remains pending. Ex. 3. Because S.L.G. filed as an unaccompanied child, Congress assigned USCIS initial jurisdiction over her asylum application. 8 U.S.C. § 1158(b)(3)(C). The Immigration Judge nevertheless directed S.L.G. to file a second Form I-589 in Immigration Court and continued her proceedings specifically for that purpose. Ex. 5. The Immigration Judge explained that, without an asylum application pending before the Immigration Court, the Court was in a position to enter an order of removal and could do so at the next hearing if S.L.G. did not submit the duplicative application. Id. S.L.G. therefore faces an untenable choice: duplicate before EOIR the asylum claim already pending before the agency to which Congress assigned initial jurisdiction, or face an order of removal without EOIR adjudicating that claim. This is precisely the circumstance in which the governing regulation authorizes termination. 8 C.F.R. § 1003.18(d)(1)(ii)(A).

**2. Ms. Cipagauta: Loss of Meaningful Access to the Provisional-Waiver Process**

Ms. Cipagauta's United States-citizen husband filed a Form I-130 on her behalf, which USCIS is processing. Ex. 7. She sought administrative closure to pursue the family-based process and, if otherwise eligible, a provisional-unlawful-presence waiver. Ex. 6. The Immigration Judge denied closure, leaving her in active proceedings. *Id.* That denial prevents her from filing Form I-601A while proceedings remain active because the waiver regulation generally requires administrative closure without recalendaring at the time of filing. 8 C.F.R. § 212.7(e)(4)(iii).

**3. Mr. Leyva: Denial of Closure Despite an Approved I-130 and Family-Based Consular Process and Threat of Removal Order**

USCIS approved the I-130 petition filed by Mr. Leyva's lawful-permanent-resident father. Ex. 11. Mr. Leyva moved for administrative closure to pursue the resulting family-based consular process and to satisfy the prerequisites for a provisional-unlawful-presence waiver. *Id.* The Immigration Judge denied the motion because the projected period of closure was "speculative," recent BIA decisions treated closure exceeding six months as usually unreasonable, and Mr. Leyva had not yet established waiver eligibility. Ex. 10. But closure is generally necessary before a respondent in pending proceedings may file a Form I-601A. 8 C.F.R. § 212.7(e)(4)(iii). Should the case not be administratively closed, then he does not have meaningful access to relief for which he is eligible.

**4. K.V.C. and Genesis: Imminent Loss of Settled Administrative Closure Based Solely on the Texas Judgment and Threat of Deportation Despite Congressional Protections**

The Immigration Court administratively closed K.V.C.'s and Genesis's removal proceedings in 2025, preserving the status quo while they pursued relief through the SIJ process Congress established for vulnerable children. Exs. 13, 16. USCIS subsequently approved each child's SIJ petition after determining that the statutory requirements were satisfied, including the required juvenile-court findings concerning parental reunification and the child's best interests. Exs. 14, 17; see 8 U.S.C. § 1101(a)(27)(J). Neither approval, however, independently terminates removal proceedings or protects the child from the entry and execution of a removal order while an immigrant visa remains unavailable.

On September 8, 2026, DHS moved to recalendar both children's proceedings. Exs. 12, 15. Neither motion identifies an individualized change in circumstances, a violation of a closure condition, or a newly available issue requiring immediate adjudication. *Id.* Instead, each invokes the Texas judgment and requests recalendaring "[t]o comply" with it. *Id.* If granted, the motions will return K.V.C. and Genesis to active removal proceedings and expose them to orders of removal before they

can complete the SIJ-based process Congress provided, notwithstanding the findings underlying their approved SIJ petitions. The governing regulation requires consideration of the totality of each child's circumstances before a contested motion to recalendar may be granted and expressly provides that no single factor is dispositive. 8 C.F.R. § 1003.18(c)(2)–(3). DHS's categorical reliance on the Texas judgment threatens to eliminate that individualized protection and place both children on a renewed path toward removal.

**5. Oscar Aguirre-Lima: Recalendaring Despite Approved SIJ Classification, Prior Closure, and Deferred Action and Threat of Future Deportation Despite Congressional Protections**

The Immigration Court administratively closed Mr. Aguirre-Lima's removal proceedings in 2022 while his SIJ petition remained pending, allowing him to pursue the humanitarian process Congress established for vulnerable children. Ex. 20. USCIS subsequently approved his SIJ petition and, because an immigrant visa was unavailable, granted him four years of deferred action as a favorable exercise of prosecutorial discretion. Ex. 19. His deferred action remains unexpired and has not been terminated.

Nevertheless, on September 8, 2026, DHS moved to recalendar Mr. Aguirre-Lima's proceedings. Ex. 18. The motion identifies no material change in his individual circumstances, no defect in the original closure order, and no termination of either his approved SIJ classification or deferred action. *Id.* Instead, DHS relies on the asserted need to comply with the Texas judgment. *Id.* If the motion is granted, Mr. Aguirre-Lima will be returned to active removal proceedings and exposed to a future order of removal even though USCIS has approved his SIJ petition, determined that deferred action is warranted, and recognized that he presently cannot complete the SIJ-based adjustment process because no immigrant visa is available. Deferred action is also an express ground supporting discretionary termination of removal proceedings. 8 C.F.R. § 1003.18(d)(1)(ii)(C). Recalendaring Mr.

Aguirre-Lima's case solely because of the Texas judgment would disregard these individualized circumstances and place him on a renewed path toward removal despite the congressional protections reflected in his approved SIJ classification.

## III. LEGAL STANDARD

A preliminary injunction requires a substantial likelihood of success, irreparable harm, equities favoring the movant, and consistency with the public interest. *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 24 (2008). The final two factors merge when the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs principally seek prohibitory relief preserving the last uncontested status: individualized docket management and the existing closure of the SIJ Plaintiffs' proceedings. *See Schrier v. University of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005). Even if any requested relief is considered mandatory, Plaintiffs satisfy the heightened standard because they seek no favorable discretionary outcome—only preservation of the governing procedures while this action proceeds. *See O Centro Espírita Beneficente União do Vegetal v. Ashcroft*, 389 F.3d 973, 975–76 (10th Cir. 2004) (en banc); *Schrier*, 427 F.3d at 1258–59.

## IV. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. The Challenged Policy Is Contrary to Statutes and Governing Regulations.

Congress assigned USCIS initial jurisdiction over asylum applications filed by unaccompanied children to ensure that those children receive an initial, nonadversarial adjudication notwithstanding pending removal proceedings. 8 U.S.C. § 1158(b)(3)(C). DOJ implemented that protection by expressly authorizing termination when a UAC asylum application is pending before USCIS. 8 C.F.R. § 1003.18(d)(1)(ii)(A). Although the regulation preserves discretion over the ultimate disposition of a

particular motion, Defendants may not adopt a categorical rule that makes USCIS's statutory jurisdiction irrelevant and forces every affected child either to duplicate the application before EOIR or face an order of removal before USCIS acts. Such a policy frustrates Congress's chosen procedure and renders the regulatory ground for termination functionally meaningless.

The SIJ framework similarly makes each child's circumstances material. Congress established SIJ classification for children satisfying dependency, parental-reunification, and best-interest requirements. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11. The governing regulations require consideration of collateral relief, anticipated delay, responsibility for that delay, and the likely outcome of proceedings; they also recognize deferred action as a basis for discretionary termination. 8 C.F.R. §§ 1003.18(c)(3)(i)(D)–(H), (d)(1)(ii)(C). Defendants cannot categorically disregard approved SIJ petitions, deferred action, or visa unavailability beyond the children's control. Exs. 14, 17, 19.

The same defect prevents the family-based Plaintiffs from pursuing Form I-601A. A person in removal proceedings generally cannot file that application unless the proceedings are administratively closed and remain unrecalendared. 8 C.F.R. § 212.7(e)(4)(iii). Because the closure regulation expressly requires consideration of that prerequisite, Defendants cannot deny closure because no waiver has been filed when closure is itself necessary to file it. *Id.* § 1003.18(c)(3)(i)(C); Exs. 6, 10–11.

These categorical restrictions conflict with § 1003.18(c)(3), which requires consideration of the totality of the circumstances and provides that "[n]o single factor is dispositive." Agencies must follow their governing regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). Applying that principle, *Immigration Center for Women & Children v. Noem* found a likelihood of success where an immigration policy disregarded procedural protections afforded beneficiaries of humanitarian relief, including recipients of deferred action. No. 2:25-cv-09848-AB-AS, ECF No. 57 at 79–82 (C.D. Cal. May 20, 2026). Defendants'

treatment of UAC asylum jurisdiction, SIJ classification, deferred action, and the I-601A prerequisites presents the same defect and is likely unlawful under 5 U.S.C. § 706(2)(A), (C), and (D).

Congress did not create SIJ classification merely to recognize a child's eligibility while permitting that protection to be rendered meaningless before a visa becomes available. The statute provides a path to permanent residence for children whom state courts have found cannot safely reunify with a parent and whose return would not serve their best interests. 8 U.S.C. §§ 1101(a)(27)(J), 1255(h). Although SIJ approval does not compel administrative closure or termination in every case, Defendants may not categorically disregard an approved petition, deferred action, or visa unavailability beyond the child's control. Doing so frustrates Congress's protective scheme and conflicts with regulations requiring consideration of the collateral process, responsibility for delay, the anticipated outcome, and the totality of the child's circumstances. 8 C.F.R. §§ 1003.18(c)(3), (d)(1)(ii)(C).

### B. Defendants May Not Use Precedential Adjudication or Internal Policy to Contradict Controlling Regulatory Text.

EOIR adopted the governing docket-management regulations through notice-and-comment rulemaking. *See Efficient Case and Docket Management in Immigration Proceedings*, 89 Fed. Reg. 46,742 (May 29, 2024); 8 C.F.R. §§ 1003.18(c)–(d), 1003.29. Those regulations require individualized determinations: the totality of the circumstances governs contested closure and recalendaring motions, and "[n]o single factor is dispositive." 8 C.F.R. § 1003.18(c)(3).

BIA precedent generally binds Immigration Judges. 8 C.F.R. § 1003.1(g)(3). But an agency may not use precedential adjudication, internal guidance, or litigation positions to contradict or render inoperative controlling regulatory text. *See Kisor v. Wilkie*, 588 U.S. 558, 574–76 (2019); *Accardi*, 347 U.S. at 267–68. Whatever authority EOIR possesses to develop legal principles through adjudication, it does not include authority to transform a regulation requiring an unweighted, totality-of-the-circumstances inquiry into a categorical rule controlled by a single consideration.

The challenged decisions and practices do precisely that. They treat anticipated delay, visa availability, and administrative finality as presumptive barriers to administrative closure, continuances, and continued closure rather than considerations within the individualized inquiry the regulations prescribe. *See Matter of Cahuec Tzalam*, 29 I. & N. Dec. 300, 304–06 (BIA 2025); *Matter of Ibarra-Vega*, 29 I. & N. Dec. 476, 481–83 (BIA 2026); *Matter of Pinzon Rozo*, 29 I. & N. Dec. 507, 507–10 (BIA 2026). Applied categorically, those presumptions render the regulation's express command that "[n]o single factor is dispositive" meaningless.

The policy is neither abstract nor speculative. The Immigration Judges' statements and rulings in the named Plaintiffs' proceedings demonstrate that the challenged authorities are already being treated as constraints on individualized adjudication. Exs. 5–6, 10. DHS's materially identical September 8 motions likewise seek to recalendar three closed SIJ cases based on the asserted need to comply with the Texas judgment rather than a change in any child's circumstances. Exs. 12, 15, 18. These consistent applications establish a present policy with immediate practical and legal consequences.

In *ICWC*, the court held that immigration guidance constituted final agency action because it announced a definitive change in policy, altered agency conduct, and subjected beneficiaries of humanitarian programs to consequences from which prior procedures had protected them. ECF No. 57 at 66–68. The court specifically relied on authority recognizing that directives changing how Immigration Judges administer their dockets constitute reviewable agency action when they have practical consequences for litigants. *Id.* at 67–68 (citing *Las Americas Immigrant Advoc. Ctr. v. Trump*, 475 F. Supp. 3d 1194, 1216 (D. Or. 2020), reconsidered in other respects, 571 F. Supp. 3d 1173 (D. Or. 2021)). Here, the binding BIA decisions, their application in the named Plaintiffs' proceedings, and

DHS's coordinated recalendaring motions likewise establish definitive agency action presently altering access to docket-management relief.

Plaintiffs are therefore likely to establish that Defendants' application of categorical restrictions conflicts with controlling regulatory text and is contrary to law. 5 U.S.C. § 706(2)(A), (C), (D).

**C. Defendants' Asserted Application of the Texas Consent Judgment Is Unlawful.**

Plaintiffs do not challenge, seek to modify, or ask this Court to review the judgment in *State of Texas v. Department of Justice*, No. 7:26-cv-00070-O (N.D. Tex. June 22, 2026). They challenge Defendants' independent conduct in Utah: treating that judgment as a command to deny otherwise available docket-management relief or to recalendar previously closed proceedings without the individualized analysis required by independently governing law.

The issue is not whether Defendants must comply with the Texas judgment; they must comply with its actual terms. The issue is whether Defendants may transform that judgment into a categorical decisional rule it does not contain. The judgment does not direct recalendaring of every closed case, make visa unavailability dispositive, or eliminate independently governing statutory and regulatory considerations. Defendants therefore may not invoke it as a substitute for the individualized adjudication required by law. *See United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971).

The Texas judgment declared the 2024 Administrative Closure Rule unlawful, enjoined Defendants from enforcing that rule, and restricted the promulgation of specified future regulations. *Id.*, ECF No. 5 at 1–2. It did not direct Defendants to recalendar any particular case, dictate the disposition of any motion pending in Utah, or make visa availability, anticipated delay, or administrative finality dispositive in an individual proceeding. The scope of a consent decree is determined by its terms, not by obligations later attributed to it. *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971).

Nor did the Texas judgment adjudicate the independent rights of Plaintiffs or the proposed Class. Plaintiffs were not parties to that proceeding and had no opportunity to litigate their statutory, regulatory, or constitutional claims. *See Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008). The judgment also does not constitute binding precedent in this District. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

Even assuming Defendants must comply fully with the Texas judgment according to its actual terms, that obligation does not authorize them to treat the judgment as supplying categorical decisional rules it does not contain. Nor does it permit Defendants to disregard independently applicable statutes, regulations, or constitutional requirements. *See* 5 U.S.C. § 706(2)(A), (C), (D); *Accardi*, 347 U.S. at 267–68; *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Plaintiffs seek no order requiring Defendants to violate the Texas judgment. They seek only an order preventing Defendants from expanding that judgment beyond its terms and using it as a substitute for the individualized adjudication otherwise required by law.

DHS's September 8 motions demonstrate the challenged expansion. Each asserts that recalendaring is necessary "[t]o comply" with the Texas judgment, but none identifies a case-specific change in circumstances, a violation of the existing closure order, or an individualized need for immediate merits adjudication. Exs. 12, 15, 18. Treating the Texas judgment as independently compelling that result gives the judgment broader effect than its terms provide and replaces individualized decisionmaking with a categorical command the judgment itself does not contain.

**D. The Challenged Policy Is Final Agency Action and Is Not Barred by 8 U.S.C. § 1252.**

The challenged BIA decisions mark the consummation of EOIR's decisionmaking on the legal standards they announce and bind Immigration Judges unless modified or overruled. 8 C.F.R. § 1003.1(g)(3). Their implementation has immediate practical and legal consequences: S.L.G. has been

directed to file a duplicative asylum application or face an order of removal without an EOIR asylum application; the family-based Plaintiffs have been denied the closure generally necessary to pursue Form I-601A; and DHS has moved to recalendar three previously closed SIJ proceedings based on the same asserted categorical constraints. Exs. 3, 5–6, 10–12, 15, 18. The challenged policy therefore satisfies both components of finality. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

The absence of final removal orders does not defeat review because Plaintiffs do not ask this Court to review an order of removal, decide whether removal proceedings should have been commenced, or determine whether any Plaintiff is removable. They challenge generally applicable legal rules that govern access to docket-management procedures and cause injuries before any final order exists. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–94 (2018); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492–97 (1991).

*ICWC* is closely analogous. There, the court held that §§ 1252(a)(5) and (b)(9) did not bar claims challenging generally applicable policies that exposed beneficiaries of congressionally created humanitarian programs to removal. ECF No. 57 at 26–27. The plaintiffs did not challenge individual removal orders, the decisions to seek removal, or the determination of removability; they challenged policies collateral to the removal proceedings. *Id.* Plaintiffs here likewise challenge Defendants' antecedent replacement of the standards governing docket-management relief, not the merits or outcome of any removal case.

Requiring Plaintiffs to await final removal orders would leave the present injuries without meaningful review. By then, S.L.G. will already have been forced to duplicate her USCIS asylum application or proceed without an EOIR asylum claim; the family-based Plaintiffs will have lost meaningful access to the provisional-waiver process; and the SIJ Plaintiffs will have lost their settled closure orders and been returned to active proceedings while visa unavailability prevents adjustment.

These procedural injuries occur before, and independently of, any final order of removal. Sections 1252(a)(5) and (b)(9) therefore do not bar this action.

**E. The Policy Is Arbitrary and Capricious.**

Agency action is arbitrary and capricious when the agency fails to consider an important aspect of the problem, relies on factors Congress did not intend it to consider, or offers an explanation inconsistent with the record or otherwise implausible. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983); 5 U.S.C. § 706(2)(A).

The challenged policy disregards considerations the governing statutes and regulations make material. Those include USCIS's initial jurisdiction over S.L.G.'s asylum application, 8 U.S.C. § 1158(b)(3)(C); approved SIJ classification and deferred action, 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 1003.18(d)(1)(ii)(C); the regulatory necessity of administrative closure for Form I-601A, 8 C.F.R. § 212.7(e)(4)(iii); and the history and purpose of an existing closure order, 8 C.F.R. § 1003.18(c)(3)(ii)(A)–(H).

Defendants' approach creates an irrational regulatory catch-22. A respondent generally cannot file Form I-601A until proceedings are administratively closed, yet Defendants deny closure because the respondent has not filed the waiver or established every prerequisite for doing so. 8 C.F.R. § 212.7(e)(4)(iii). That reasoning disregards § 1003.18(c)(3)(i)(C), which expressly requires consideration of whether closure is necessary for an application or other action before DHS. Treating the absence of a waiver application as a reason to withhold the procedural condition required to file it fails to consider an important aspect of the regulatory scheme and is arbitrary and capricious. *See Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983).

Rather than examine those considerations in context, Defendants treat anticipated delay, visa backlogs, ordinary USCIS processing times, and the asserted need for administrative finality as

presumptively controlling. That approach is irreconcilable with a regulation requiring consideration of the totality of the circumstances and providing that "[n]o single factor is dispositive." 8 C.F.R. § 1003.18(c)(3).

The September 8 motions confirm the absence of individualized reasoning. Each relies on the asserted need to comply with the Texas judgment; none identifies a case-specific change in circumstances, a defect in the original closure order, or a reason particular to the child for immediate merits adjudication. Exs. 12, 15, 18. Their materially identical reasoning supports the conclusion that Defendants are implementing a predetermined policy rather than exercising the reasoned, individualized judgment the regulations require. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *State Farm*, 463 U.S. at 43.

*ICWC* again provides persuasive support. There, the court found a likelihood of success where a new immigration policy exposed humanitarian petitioners to detention and removal while disregarding interim protections, deferred action, and the relationship between separate components of the immigration system. ECF No. 57 at 68–80. Defendants' policy here similarly disregards the interaction between EOIR proceedings and USCIS-controlled processes, while using delays and visa availability outside Plaintiffs' control as reasons to accelerate their cases toward removal.

**F. The Policy Violates Procedural Due Process.**

The Fifth Amendment applies to noncitizens in removal proceedings and guarantees fundamentally fair procedures, including an opportunity to be heard at a meaningful time and in a meaningful manner. *Landon v. Plasencia*, 459 U.S. 21, 32–34 (1982); *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (en banc). Plaintiffs do not claim a constitutional entitlement to termination, administrative closure, a

continuance, asylum, adjustment, or any other favorable discretionary outcome. They claim a right to a genuine adjudication under the lawful procedures Defendants established to decide those requests.

Defendants' categorical practice denies that protection. It treats USCIS's initial UAC-asylum jurisdiction, approved SIJ petitions, deferred action, the regulatory prerequisites for Form I-601A, and the circumstances supporting existing closure orders as irrelevant or presumptively insufficient. Plaintiffs may submit evidence and motions, but the opportunity to be heard is not meaningful if a predetermined categorical rule makes material evidence incapable of affecting the decision.

The resulting injuries are substantial. S.L.G. must duplicate her pending USCIS asylum application or face an order of removal without an EOIR asylum application. The family-based Plaintiffs cannot access the procedural condition generally required to pursue Form I-601A. The SIJ Plaintiffs face renewed removal proceedings despite approved petitions, individualized closure orders, and, for Oscar, an unexpired grant of deferred action. Exs. 3, 5–6, 10–20.

In *ICWC*, the court found a likelihood of success on procedural-due-process claims where the challenged policies exposed beneficiaries of congressionally created humanitarian programs to detention and removal without the required individualized consideration. ECF No. 57 at 80–85. The same principle applies here. Defendants may retain discretion over the ultimate disposition of docket-management requests, but they may not replace lawful adjudication with a predetermined policy that renders congressionally and regulatorily material circumstances irrelevant.

Plaintiffs have therefore demonstrated a substantial likelihood of success on their APA, statutory, regulatory, and due-process claims. Because the challenged policies threaten irreparable injury before final judgment, the Court may grant preliminary relief under Rule 65 and, alternatively, exercise its authority under 5 U.S.C. § 705 to preserve Plaintiffs' status and rights during judicial review.

## V. PLAINTIFFS AND THE PROPOSED CLASS WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF

### A. Children With Approved SIJ Petitions Face Imminent Loss of Protection and the Resulting Risk of Removal

Congress created SIJ classification to provide a path to permanent residence for children whom state courts have found cannot safely reunify with a parent because of abuse, neglect, abandonment, or a similar basis and whose return would not be in their best interests. 8 U.S.C. §§ 1101(a)(27)(J), 1255(h). Although an approved SIJ petition does not itself confer lawful status or make a visa immediately available, children should not be placed on a path toward removal merely because a statutory backlog temporarily prevents adjustment.

That danger reflects a broader policy. EOIR reportedly required hundreds of Immigration Judges to attend training instructing them to restrict continuances for individuals awaiting visas or permanent residence, specifically including SIJ beneficiaries with approved petitions but no immediately available visa. Ex. 21; *see also Matter of Cahuec Tzalam*, 29 I. & N. Dec. 300, 304–06 (BIA 2025); *Matter of Pinzon Rozo*, 29 I. & N. Dec. 507, 507–10 (BIA 2026). Once an SIJ case is recalendared, visa unavailability may be used to deny further delay and move the child toward a removal order before the priority date becomes current.

K.V.C., Genesis, and Oscar face that injury now. Each has an approved SIJ petition and administratively closed proceedings, and Oscar also holds unexpired deferred action. Exs. 13–14, 16–17, 19–20. DHS nevertheless moved to recalendar all three cases based on the Texas judgment, without identifying any individualized change in circumstances. Exs. 12, 15, 18. If those motions are granted,

the children will return to active removal proceedings while visa unavailability prevents them from completing their SIJ-based adjustment process.

Preliminary relief would not grant status, make a visa available, or dictate the outcome of any removal case. It would preserve the existing closure orders and prevent Defendants from moving these children toward removal through a categorical policy before this Court determines whether that policy is lawful. Removal, family separation, and exposure to the conditions underlying the state courts' best-interest findings cannot be adequately repaired through damages or a later judgment.

### B. Unaccompanied Minors Seeking Asylum With Congressionally Protected Safeguards Face the Risk of Removal

Congress gave USCIS initial jurisdiction over asylum applications filed by unaccompanied children, even when removal proceedings are pending, and expressly authorized Immigration Judges to terminate proceedings in that circumstance. 8 U.S.C. § 1158(b)(3)(C); 8 C.F.R. § 1003.18(d)(1)(ii)(A). The accelerated-adjudication policy described in EOIR's reported training threatens that protection by advancing removal cases while collateral applications remain pending. Ex. 21.

S.L.G. faces that danger now. USCIS received her affirmative asylum application on June 12, 2026, and it remains pending. Ex. 3. Nevertheless, the Immigration Judge directed her to file a duplicative Form I-589 in Immigration Court and warned that, without that filing, the Court could enter an order of removal at the next hearing. Ex. 5. S.L.G. therefore must either litigate the same sensitive claim before two agencies or face removal before USCIS completes the adjudication Congress assigned to it.

Either result is irreparable. A later judgment cannot restore the congressionally prescribed process, eliminate the burdens and risks of parallel asylum litigation, or undo removal and the resulting separation from S.L.G.'s family, counsel, and community. Preliminary relief would not dictate the

outcome of either proceeding; it would preserve USCIS's initial adjudicatory role and prevent Defendants from treating the absence of a duplicative EOIR filing adversely while that adjudication remains pending.

### C. The Family-Based Plaintiffs Face Loss of Meaningful Access to the I-601A Process and Resulting Removal

A person in removal proceedings generally cannot file Form I-601A unless those proceedings are administratively closed and remain unrecalendared. 8 C.F.R. § 212.7(e)(4)(iii). Denying closure therefore does not merely delay Ms. Cipagauta and Mr. Leyva; it prevents them from satisfying a prerequisite to the provisional-waiver process. Exs. 6–7, 10–11.

EOIR's reported training instructed Immigration Judges to restrict delay for individuals awaiting visas or permanent residence, even when agency processing or numerical limits remain outside their control. Ex. 21. That policy directly affects these Plaintiffs. Ms. Cipagauta's I-130 remains pending while her individual hearing approaches, and Mr. Leyva's approved I-130 cannot lead to a provisional waiver because the Immigration Judge denied closure based partly on the anticipated duration of the very process he seeks to pursue. Exs. 6–8, 10–11.

Both Plaintiffs thus face removal while the denial of closure blocks their access to the regulatory process. A later judgment cannot restore their ability to pursue Form I-601A from within the United States or undo the resulting family separation. *See Kansas Health Care Ass'n v. Kansas Department of Social & Rehabilitation Services*, 31 F.3d 1536, 1543 (10th Cir. 1994). Preliminary relief is necessary to preserve meaningful access to that process before removal makes it unavailable.

## VI. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION

Plaintiffs face the loss of congressionally created procedural protections, compelled duplicative litigation, disruption of settled closure orders, inability to pursue the I-601A process, and renewed

exposure to removal proceedings. Those injuries are concrete and cannot be remedied through money damages. *See* 8 U.S.C. §§ 1101(a)(27)(J), 1158(b)(3)(C); 8 C.F.R. §§ 1003.18(c)–(d), 212.7(e)(4)(iii).

Defendants suffer no cognizable injury from an order requiring them to preserve the status quo and administer their own statutes and regulations as written. The requested injunction would not require an Immigration Judge to grant a particular motion, adjudicate an asylum application, approve a visa petition or waiver, or decide removability. It would require only the individualized consideration the current regulations prescribe. *See* 8 C.F.R. §§ 1003.18(c)(3), (d), 1003.29; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954).

The public interest favors lawful agency action, fair immigration adjudication, family unity, and the efficient use of USCIS and EOIR resources. The Government has no legitimate interest in forcing S.L.G. to prepare a duplicate asylum application while USCIS adjudicates the application Congress assigned to it, denying closure necessary for an otherwise eligible person to pursue Form I-601A, or recalendaring SIJ cases through a categorical policy rather than the regulatory totality-of-the-circumstances inquiry. *See* 8 U.S.C. § 1158(b)(3)(C); 8 C.F.R. §§ 1003.18(c)(3), 212.7(e)(4)(iii).

The injunction would promote orderly administration. It preserves existing closures, prevents unnecessary duplicate proceedings, and ensures that Defendants apply their governing framework pending a decision on the merits. Because the Government is the opposing party, the balance-of-equities and public-interest factors merge, and both favor Plaintiffs. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## VII. CLASSWIDE PRELIMINARY RELIEF IS APPROPRIATE

### A. Plaintiffs Satisfy Rule 23(a).

Rule 23(a) requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004).

**Numerosity.** The Class includes persons under the Salt Lake City Immigration Court's docket control who are subject to the challenged policy. Their identities are ascertainable from EOIR and DHS records, and joinder is impracticable given changing hearing dates, pending motions, and removal-related consequences. *See Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978).

**Commonality.** A common question governs every claim: whether Defendants may use BIA precedent, internal policy, or the Texas judgment to replace individualized regulatory standards with categorical restrictions on docket-management relief. That question concerning a uniform policy is capable of classwide resolution. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**Typicality.** The named Plaintiffs and Class members suffer the same alleged injury—application of categorical restrictions instead of the governing individualized standards—and seek the same prospective relief. Differences in the underlying immigration processes do not defeat typicality. *See Shook*, 386 F.3d at 968; *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

**Adequacy.** The named Plaintiffs' interests align with those of the Class because all seek lawful consideration of docket-management requests without categorical restrictions. No conflict exists, and Plaintiffs are represented by counsel capable of protecting the Class's interests. Fed. R. Civ. P. 23(a)(4); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

**B. Rule 23(b)(2) Is Satisfied.**

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class," such that final injunctive or declaratory relief is appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2). That is this case. Plaintiffs challenge Defendants' common use of BIA precedent, internal policy, and the asserted effect of the Texas judgment to impose categorical restrictions on docket-management relief in proceedings before the Salt Lake City Immigration Court.

A single declaration defining the governing legal standards, coupled with an injunction requiring Defendants to apply those standards through meaningful individualized consideration, would provide classwide relief. The requested remedy is indivisible in the Rule 23(b)(2) sense: it addresses the alleged policy once and governs Defendants' conduct toward every class member. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

The requested relief is also limited. Plaintiffs do not ask the Court to grant termination, dismissal, administrative closure, a continuance, or recalendaring in any individual case. Nor do they ask the Court to adjudicate asylum, SIJ, adjustment, visa, or waiver eligibility. They seek only prospective relief prohibiting categorical restrictions and requiring Defendants to apply the statutes and regulations that govern each individual request. That form of relief is appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2); *Shook v. El Paso Cnty.*, 386 F.3d 963, 974 (10th Cir. 2004).

**C. Classwide Relief Is Properly Tailored.**

The requested injunction is limited to the defined Rule 23 class and subclasses. It does not seek relief for nonparties nationwide or an order regulating Defendants' conduct beyond the persons represented in this action. That is consistent with *Trump v. CASA, Inc.*, which distinguishes classwide relief obtained through Rule 23 from relief extending to persons outside a properly certified class. 145 S. Ct. 2559, 2567–69 (2025).

The proposed injunction is also geographically and institutionally confined. It applies only to persons in removal, deportation, or exclusion proceedings before the Salt Lake City Immigration Court, or whose proceedings remain administratively closed under that Court's jurisdiction and docket control. It requires only that Defendants apply governing law to that defined group; it neither controls proceedings in other immigration courts nor directs the disposition of any individual motion or immigration benefit.

That limitation provides relief commensurate with the injuries Plaintiffs allege while respecting the ordinary principle that equitable relief must be no broader than necessary to redress those injuries. *See Trump v. CASA*, 145 S. Ct. at 2565–67; *Gill v. Whitford*, 585 U.S. 48, 72–73 (2018).

## VIII. REQUESTED PRELIMINARY INJUNCTION

Plaintiffs respectfully request that, under Federal Rule of Civil Procedure 65 and, alternatively, 5 U.S.C. § 705, the Court preserve Plaintiffs' status and rights pending judicial review by preliminarily enjoining or postponing application of the challenged agency actions. Any injunction should bind Defendants and the persons identified in Rule 65(d)(2) who receive actual notice and should apply to the certified Class and Subclasses as follows:

1. Pursuant to 5 U.S.C. § 705, the Court should postpone application to Plaintiffs and the certified Class and Subclasses of Defendants' challenged categorical policies governing termination, dismissal, administrative closure, continuances, and recalendaring pending final judgment.
2. Defendants shall not apply *Matter of Cahuec Tzalam*, 29 I. & N. Dec. 300 (BIA 2025); *Matter of Ibarra-Vega*, 29 I. & N. Dec. 476 (BIA 2026); or *Matter of Pinzon Rozo*, 29 I. & N. Dec. 507 (BIA 2026), in a manner that makes anticipated delay, visa availability, administrative finality, or any other single factor dispositive of a request for docket-management relief contrary to governing statutes or regulations.
3. Defendants shall not apply any precedent, policy, practice, memorandum, training, or asserted legal rule in a manner that contradicts or renders inoperative the individualized standards prescribed by 8 C.F.R. §§ 1003.18(c)–(d) and 1003.29, including the requirement that contested administrative-closure and recalendaring motions be decided under the totality of the circumstances and that no single factor be treated as dispositive.

4. Defendants shall not treat the judgment in *State of Texas v. Department of Justice*, No. 7:26-cv-00070-O (N.D. Tex. June 22, 2026), as independently requiring denial of docket-management relief or recalendaring of a previously closed proceeding, except to the extent required by that judgment's actual terms and consistent with independently governing law.
5. Defendants shall not require members of the UAC Asylum Subclass to file a duplicative Form I-589 in Immigration Court while USCIS exercises initial jurisdiction over a pending affirmative asylum application under 8 U.S.C. § 1158(b)(3)(C), or treat the absence of a duplicative EOIR filing adversely.
6. Defendants shall not deny or materially restrict termination, dismissal, administrative closure, a continuance, or comparable docket-management relief solely because an immigrant visa is not immediately available to an SIJ beneficiary. Defendants must consider the approved SIJ petition, deferred action where applicable, responsibility for delay, the collateral immigration process, and the person's individual procedural circumstances.
7. Defendants shall not deny administrative closure through a categorical policy that prevents members of the Family-Based/I-601A Subclass from pursuing a provisional-unlawful-presence waiver under 8 C.F.R. § 212.7(e), including where closure is necessary to file Form I-601A.
8. Defendants shall not recalendar the proceedings of members of the Administratively Closed SIJ Recalendaring Subclass solely because of the Texas judgment, the challenged BIA decisions, or another categorical policy. Any contested motion to recalendar must receive the individualized, totality-of-the-circumstances consideration required by 8 C.F.R. § 1003.18(c)(3).

9. Nothing in the Court's order shall require an Immigration Judge to grant any particular motion or require Defendants to adjudicate removability, asylum, SIJ classification, a visa petition, adjustment of status, or a waiver in any particular manner. The order shall require only preservation of Plaintiffs' status and rights and compliance with the governing individualized procedures pending judicial review.

10. The Court should waive security under Rule 65(c), or alternatively require only nominal security, because Plaintiffs seek prospective compliance with federal law and Defendants face no measurable risk of monetary loss.

11. The Court should retain jurisdiction to enforce and modify its preliminary order as necessary.

Plaintiffs respectfully request that the Court certify the proposed Class and Subclasses; postpone the challenged agency actions under 5 U.S.C. § 705 or enter the requested preliminary injunction under Rule 65; waive or require only nominal security; and grant such further relief as the Court deems just and proper.

DATED: September 14, 2026

Respectfully submitted,

/S/ ALEC S. BRACKEN
Alec S. Bracken (UT SBN 17178)
Contigo Law
P.O. Box 249
Midvale, UT 84047
Tel. (801) 980-9430
Email: alec@contigo.law